# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CARLOS MONTEMAYOR, | : | |
| | : | **Case No. 1:09-CR-551-LLM** |
| *Movant / Petitioner,* | : | |
| | : | |
| v. | : | Habeas Corpus Action/Motion |
| | : | Pursuant to 28 U.S.C. § 2255 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | **HEARING REQUEST** |
| *Respondent.* | : | |
| | : | |

## MOTION TO VACATE, SET ASIDE, OR CORRECT
## CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255

COMES NOW, Carlos Montemayor (hereinafter "Petitioner"), by and through undersigned counsel, and files this motion pursuant to 28 U.S.C. § 2255, showing as follows:

**I.   STATEMENT OF OPERATIVE FACTS AND PROCEDURE**

Petitioner was charged in 2009 in a multi-count indictment alleging Conspiracy to Possess with Intent to Distribute at Least Five Kilograms of Cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(ii); Conspiracy to Import at Least Five Kilograms of Cocaine, in violation of 21 U.S.C. §§ 963, 960(b)(1)(B)(ii); Possession with Intent to Distribute at Least Five Kilograms of Cocaine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(ii); and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). Arrested in

1

Mexico on November 23, 2010, Petitioner was extradited to the United States on or around September 30, 2015.

On or around February 24, 2016, Petitioner hired attorney Richard A. Rice, Jr. ("Mr. Rice"). (Doc. 184). Shortly after his entry for Petitioner, the Government moved to disqualify Mr. Rice, who from 2003 to 2008 served as an AUSA for the Northern District of Georgia in the Narcotics/Organized Crime and Drug Enforcement Task Force. Also serving as an AUSA in the office at the time was John Horn ("Mr. Horn"). Mr. Horn led the investigation that led to Petitioner's indictment, while Mr. Rice led a separate investigation into suspected drug activity.

The Government, in its motion to disqualify Mr. Rice from representing Petitioner, argued that the "overlapping targets of, and the coordination between, the two investigations to determine the roles of the targets and prosecution strategy, exposed Mr. Rice to confidential information and strategy about the investigation of [Petitioner]" as well as exposed Mr. Rice to evidence the Government intended to introduce against Petitioner at trial. (Doc. 261 at. pp. 2). Mr. Rice disputed this characterization, and the parties ultimately gave declarations to the Court that it summarized as follows:

> …Mr. Horn stated that the Section held a weekly meeting of all its attorneys, which Mr. Rice usually attended. The attorneys discussed pending investigations and cases, and, in 2005, Mr. Horn "openly

2

shared" information about the Valencia DTO investigation. (Horn Decl. ¶ 7). Mr. Rice recalled that, at these weekly meetings, the attorneys shared only "general information" that "generally consisted of basic information . . . contained in discovery materials." (Rice Decl. ¶¶ 33-34).

The attorneys also provide different accounts of their discussions about the investigations and preparing the TIII applications and supporting affidavits containing information about the other's investigation. Mr. Horn recalls talking with Mr. Rice about the tension between the DEA groups, whether targets were overlapping, and about the Valencia DTO investigation generally. (Horn Decl. ¶¶ 6, 12, 14-19). Mr. Horn summarized an AUSA's responsibility when preparing a TIII application and the supporting affidavit, and supervising a wiretap investigation, including: ensuring the accuracy of the applications and supporting affidavits, complying with statutory requirements, and certifying under oath that he or she has reviewed and discussed the affidavit with the affiant. (Id. ¶¶ 11-12).

Mr. Horn stated that, before including information about another AUSA's investigation in a TIII application and supporting affidavit, an AUSA discusses with the other AUSA the information to be included. He and Mr. Rice did so in the Valencia DTO and Gotti DTO investigations. (Id. ¶¶ 14, 19). Mr. Rice stated that he prepared TIII applications and supporting affidavits, including those used in this case, based mostly on templates which were modified in the "prior applications" and "necessity" sections to fit the specific facts of the case. (Rice Decl. ¶ 6). Mr. Rice denied having any "strategic discussions" with Mr. Horn regarding the Valencia DTO and Gotti DTO investigations.

Mr. Rice asserts Mr. Horn provided him with text concerning the Valencia DTO investigation, which Mr. Rice then simply "cut and pasted" into the Gotti DTO TIII applications and supporting affidavits. (Id. ¶¶ 21-23). For the discussion about the Gotti DTO's connection to the Valencia DTO included in the wiretap affidavits for the Valencia DTO, Mr. Rice stated that he "provided AUSA Horn with the text to be include in the . . . wiretap applications and affidavits." (Id. ¶ 21).

3

> Mr. Rice denied receiving any information about telephone toll records obtained other than those included in the Gotti DTO wiretap applications and supporting affidavits. Mr. Rice denied being aware, at the time, of the defendants charged as a result of the Valencia DTO investigation and denied participating in, assisting with, or providing legal advice in the Valencia DTO investigation other than preparing the two pen register and cell site applications. (Id. ¶¶ 7-9, 12, 26-27, 29-32, 42-43).

(Doc. 261 at pps. 10-12).

Despite Petitioner's express waiver of any conflict his retained counsel might have had as an AUSA from 2003 to 2008, which then raised a presumption in favor of Mr. Rice representing Petitioner, the district court found that presumption to be overcome by the Government's "demonstration of an actual conflict or a serious potential for conflict" even though the Government declined an evidentiary hearing. (Doc. 261 at pp. 14). Thus, following substantial litigation surrounding the issue, Mr. Rice was removed from representation by the district court on or around June 2, 2017. (Doc. 261).

Following Mr. Rice's removal, Petitioner had numerous counsel who failed to appeal the issue of Mr. Rice's removal or properly preserve that issue for appeal. Ultimately, Petitioner's court appointed lawyer, Paul Cognac, advised Petitioner to reject the Government's plea offer of 25 years to serve, telling Petitioner the district court would impose a sentence of 10 to 15 years. (Doc. 364 at pps. 111-12).

). Instead, on May 16, 2019, Petitioner was sentenced to a term of 411 months, or 34 years.

In Petitioner's direct appeal, handled by undersigned counsel (who entered the case following the guilty plea and sentencing), Petitioner raised the issue of Mr. Rice's removal. However, the 11th Circuit Court of Appeals ultimately held, on May 29, 2020, that Petitioner could not challenge the ruling because it was waived when Petitioner entered his unconditional guilty plea. This § 2255, which centers on previous counsels' failure to raise and properly preserve this issue, timely follows.

## II.  GROUNDS AND CITATION OF AUTHORITY

### GROUND ONE

**PETITIONER WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE CONSTITUTION OF THE UNITED STATES AND <u>STRICKLAND v. WASHINGTON</u>, 466 U.S. 688 (1984).**

Petitioner's trial counsel provided ineffective assistance at all stages of the proceedings in violation of his rights pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. <u>Williams v. Turpin</u>, 87 F.3d 1204 (11th Cir. 1996). A defendant's right to the assistance of counsel is long-established. <u>Powell v. Alabama</u>, 287 U.S. 45 (1932). As the Supreme Court of the United States has held, lawyers "are necessities not luxuries," <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344 (1963), whose "presence is essential because they

5

are the means through which other rights of the person on trial are secured." United States v. Cronic, 466 U.S. 648, 653 (1984).

A defendant's constitutional right to counsel encompasses the right to the *effective* assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 5120 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). To that end, the Supreme Court of the United States has repeatedly emphasized counsel's "fundamental" role in ensuring fair proceedings. *See, e.g., Cronic*, 466 U.S. at 648; *Argersinger v. Hamlin*, 407 U.S. 24, 31 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 343-44 (1963).

### A. Petitioner's Counsel Failed to Properly Raise and Preserve the Erroneous Removal of Attorney Richard Rice, which Constituted Structural Error

The Constitutional guarantee of counsel under the Sixth Amendment has been construed to include four rights: the right to counsel, the right to effective assistance of counsel, the right to a preparation period sufficient to ensure a minimal level of quality of counsel, and the right to be represented by counsel of one's own choice. *United States v. McCutcheon*, 86 F.3d 187 (11th Cir. 1996). With regard to the right to counsel of one's choice, the need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an

6

attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial. *United States v. McCutcheon, supra*; *see also Wheat v. United States*, 486 U.S. 153 (1988).

If the right to counsel of choice is violated—that is, if the trial court improperly prevents a defendant from being represented by his counsel of choice—this qualifies as "structural error" and is not subject to harmless error analysis. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). In *Gonzalez-Lopez*, the trial court barred an out-of-state attorney from representing the defendant without a legitimate basis. The defendant was represented at trial by a competent in-state attorney. Though conceding that the exclusion of the out-of-state attorney was not proper, the government argued on appeal that because the defendant was represented by competent counsel at trial, there was no prejudice. Justice Scalia, writing for the majority, rejected this argument:

> Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the 'framework within which the trial proceeds' … Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate

7

universe.

Gonzalez-Lopez, supra, 126 S. Ct at 2564–65. As Justice Scalia explained during oral argument in the *Gonzalez-Lopez* case:

> I don't want a competent lawyer. I want a lawyer who's going to get me off. [Laughter] I want a lawyer who will invent the Twinkie defense … I would not consider the Twinkie defense an invention of a competent lawyer. But I want a lawyer who's going to win for me. … And there's no way to predict what lawyer has a charming way with the jury or … brings in some … side matters that maybe shouldn't be brought in but the judge is silly enough to let them in. I want to win. … And the criterion for winning is not how competent is the lawyer necessarily.

Oral Argument in *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (April 18, 2006).

Here, Petitioner waived any conflict his retained counsel, Mr. Rice, might have had as an AUSA from 2003 to 2008, which then raised a presumption in favor of Mr. Rice representing Petitioner, as the district court admitted. (Docs. 230, 231, 253, 261). Nonetheless, the district court found that presumption to be overcome by the Government's "demonstration of an actual conflict or a serious potential for conflict. *United States v. Clark*, 333 F. Supp. 2d 789, 793 (E.D. Wis. 2004)." This conclusion by the district court is in error and must be reversed.

The Government, who was forced to overcome the presumption, declined an evidentiary hearing, instead conceding that the issue could be decided by the declarations and pleadings of the parties. (Doc. 253). Consequently, as the district court was unable to make credibility determinations, the Government could only

8

prevail if Mr. Rice conceded a violation of 18 U.S.C. § 207, which disqualifies a former AUSA only if (1) the particular matter involves the same "specific party or parties" and (2) if, while formerly employed as an AUSA, the attorney participated in the matter "personally and substantially."

Mr. Rice, in his declaration and response to the motion, conceded no such thing, summarizing his position as follows:

> Perhaps unintentionally, the Government's motion fails to make a critical issue clear. Namely, despite some concerns when the respective investigations began, the Gotti Investigation and the Valencia Investigation **are not related**. Indeed, the Government's motion begins with the strangely worded assertion that the two investigations were, "at the time, related." Doc, 196 at 1. However, as established below – and even as grudgingly conceded in the Government's motion – the Gotti Investigation and the Valencia Investigation were not "at the time: related and are not related to date. There was in fact no "overlapping" of targets.
>
> The Government's [sic] argues that there was coordination of prosecution strategy. This is incorrect. There was no "group think" on how and whom should be prosecuted. Indeed, given the professional competitiveness and personal animus between certain members of Strike Force Group One and Enforcement Group One, such "collaboration" was certainly not part of either investigation. Further, neither AUSA, both of whom had significant experience assisting wiretap investigations and prosecuting wiretap cases needed or utilized strategic help from the other.
>
> Nor is the Government's position supported by the fact that former AUSA Rice signed one Pen App on behalf of AUSA Horn and then prepared one Pen App and Order for agents conducting the Valencia Investigation while AUSA Horn was on vacation. This does not constitute personal and substantial involvement, especially not sufficient enough to justify infringement of Mr. Montemayor's Sixth Amendment right to counsel of his own choosing.

9

(Doc. 208).

Accordingly, when the Government limited itself to the declarations and pleadings of the parties, it could not overcome the presumption of Petitioner's waiver without an adverse credibility finding regarding Mr. Rice's statements—something the Government precluded when it declined an evidentiary hearing. As such, the disqualification of Mr. Rice was fundamental, structural error and requires reversal.

Consequently, Petitioner's counsel, who represented him prior to and during his plea and term of months sentencing were ineffective for failing to properly raise and preserve this issue. Although the Government conceded in its pleadings in the 11th Circuit that the issue of Rice's removal was properly before the appellate court, that court ultimately ruled that in its opinion of May 29, 2020, that the error had been waived by the guilty plea. Accordingly, to the extent that this issue should have been raised in Petitioner's Rule 11(d)(2)(B) motion—an odd conclusion given that the inclusion of a condition for appeal does not fit into a motion to withdraw guilty plea and that Petitioner had already been sentenced when the motion was filed—undersigned counsel would then be the cause of the waiver and would be the ineffective counsel, which is raised here.

While that would not be the appropriate procedural interpretation, and deficiency lies with Mr. Cognac and his predecessors who followed Mr. Rice's

10

removal, the fact remains that this deficiency injected structural error into the proceedings and requires relief by the granting of this post-conviction motion.

### B. Petitioner Received Ineffective Assistance of Counsel Leading up to and During his Guilty Plea and Sentencing

During the plea process, the United States Supreme Court has held that defense counsel has a constitutional obligation to render competent and complete advice. And, if counsel's representation falls below an objective standard of reasonableness, and the outcome of the plea process would have been different with competent advice, a defendant will prevail on a claim of ineffective assistance of counsel. *Lafler v. Cooper,* 132 S.Ct. 1376 (2012).

Here, Mr. Cognac advised Petitioner to reject an offer by the Government of approximately twenty-five (25) years in prison, instead telling him that a sentence of approximately ten (10) to fifteen (15) years was very likely to be imposed in a non-negotiated plea, estimating a guideline range ten (10) points lower than that of reality. (Doc. 364 at pps. 111-12 (plea counsel expressly asking the court for and stating his belief of a sentence he thought could be reasonably imposed)).

Had plea counsel accurately and reasonably computed Petitioner's potential sentence, he would have advised Petitioner to accept the negotiated plea or, if that was no longer an option, to proceed to trial—as there is no distinction to a

11

Petitioner who is forty-seven (47) years old between multiple life sentences (if Petitioner lost at trial) and a forty (40)-year sentence. Most importantly, Mr. Cognac also failed to bring a Spanish language interpreter to his meetings with Petitioner on numerous critical occasions leading up to plea and sentence, causing Petitioner to not fully understand.

In whole, plea counsel rendered constitutionally deficient and prejudicial performance that resulted in Petitioner entering into a non-negotiated plea based on fundamentally flawed legal advice. *Strickland* and *Lafler*, *supra*. To the extent Petitioner's Rule 11(d)(2)(B) was properly before the court even though filed after sentencing, and precludes a ruling on this issue, it is hereby raised that undersigned counsel was ineffective for failing to properly raise and preserve said ruling on appeal.

### III. EVIDENTIARY HEARING REQUEST

Under 28 U.S.C.A. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney [and] grant a prompt hearing thereon…" 28 U.S.C.A. § 2255(b).

This statutory requirement creates a default hearing unless the record makes "manifest the invalidity of a claim." *Sosa v. United States*, 550 F.2d 244 (5th Cir. 1977). Where a set of facts that support a movant's claim cannot be refuted by the

face of the record, a hearing cannot be denied. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Accordingly, Petitioner requests an evidentiary hearing on his motion/petition.

WHEREFORE, based on the foregoing, Petitioner urges:

A. That the Court set this matter down for an evidentiary hearing;

B. That the Petitioner be permitted to engage in discovery as provided by law and is necessary to further the claims set forth herein;

C. That the Court allow Petitioner to present evidence in support of the allegations raised herein;

D. That Petitioner attend the requested evidentiary hearing on this matter;

E. That Petitioner be permitted to amend this motion to assert additional grounds for relief;

F. That, following the evidentiary hearing, the criminal judgment from Petitioner's conviction be vacated; and

G. That the Court grant such other relief as sanctioned by the law and as warranted under the circumstance.

Respectfully submitted, this 26th day of August, 2021.

                                        /s/ *Stephen M. Reba*
                                        STEPHEN M. REBA
                                        Georgia Bar No. 532158
                                        *Counsel for Movant / Petitioner*

P.O. Box 1046
Decatur, Georgia 30031
(404) 850-7949 (phone)
(404) 935-5305 (fax)
smr@rebalaw.com

## **CERTIFICATE OF SERVICE/TYPEFACE**

This is to certify that I have served a copy of the within and foregoing 28 U.S.C. § 2255 Motion on U.S. Attorney's Office, through this Court's electronic filing system, which generates an email with said copy attached in electronic form.

I further certify that the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1C.

This 26th day of August, 2021.

/s/ *Stephen M. Reba*
STEPHEN M. REBA
Georgia Bar No. 532158
*Counsel for Movant / Petitioner*

P.O. Box 1046
Decatur, Georgia 30031
(404) 850-7949 (phone)
(404) 935-5305 (fax)
smr@rebalaw.com

15